## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **CATHY ANN H. LITTLE**, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **7:13-CV-00558-KOB** |
| | ) | |
| **CAROLYN W. COLVIN**, | ) | |
| **Acting Commissioner, Social** | ) | |
| **Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On November 17, 2009, the claimant, Cathy Ann Little, applied for disability insurance benefits under Title II of the Social Security Act (R. 96, 178-84), and for supplemental security income under Title XVI of the Social Security Act on December 3, 2009. (R. 185-89). The claimant alleges disability commencing on July 8, 2009, because of a history of carpal tunnel syndrome and chronic and severe pain. The Commissioner denied the claim both initially and on reconsideration. (R. 19). The claimant filed a timely request for a hearing before an Administrative Law Judge. The ALJ held a hearing on April 13, 2001 (R. 30-65), and a supplemental hearing on August 19, 2011. (R. 66-95).

In a decision dated September 8, 2011, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for supplemental security income. (R. 19-21). On January 24, 2013, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social

1

Security Administration. (R. 1-4). The claimant has exhausted her administrative remedies, and

this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated

below, this court affirms the decision of the Commissioner.

## II. ISSUE PRESENTED

The claimant presents the following issue for review: whether the ALJ properly applied

the Eleventh Circuit's pain standard.

## III. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is limited. This court must affirm

the Commissioner's decision if the Commissioner applied the correct legal standards and if

substantial evidence supports the factual conclusions. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*,

129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No... presumption of validity attaches to the [Commissioner's] legal conclusions,

including determination of the proper standards to be applied in evaluating claims." *Walker*, 826

F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The

court will affirm those factual determinations that are supported by substantial evidence.

"Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 401

U.S. 389, 402 (1971).

The court must keep in mind that opinions, such as whether a claimant is disabled, the

nature and extent of a claimant's residual functional capacity, and the application of vocational

factors, "are not medical opinions, ... but are, instead, opinions on issues reserved to the

Commissioner because they are administrative findings that are dispositive of a case; i.e, that

2

would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the Plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports the finding.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

3

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. § 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

## V. FACTS

The claimant has a limited education and was fifty-two years old at the time of the administrative hearing. (R. 21, 32). Her past work experience includes employment as a cook at Jitney Jungle and Winn Dixie. (R. 42, 207). The claimant alleged that she was unable to work because of carpal tunnel syndrome and chronic and severe pain in her right hand, a result of an on-the-job injury. (R. 41).

### *Physical Limitations*

On July 8, 2009, the claimant sustained injuries to her knees, left hip, back, and right wrist  when she slipped and fell at work. On the day of the fall, the claimant visited Dr. Manly Sullivan, a treating physician at Pickens County Medical Center, who treated her with Lortab. On July 10, 2009, Dr. Nikki Christensen, a treating physician at Pickens County Medical Center, reported that x-rays of her knees, hip, and back showed no nerve damage to coincide with the

claimant's pain. (R. 244-45). After the claimant continued to complain of pain in her right hand, left hip, and lower back on July 17, 2009, Dr. James Shamblin, Jr., a physician at Aliceville Rural Health Clinic, prescribed Flexeril to the claimant with a refill on Lortab. Additionally, Dr. Shamblin advised the claimant to start physical therapy three times a week, and to stay off of work until the pain reduces. (R. 257-58). On August 13, 2009, and September 3, 2009, the claimant followed-up with Dr. Shamblin so he could check on the progress of the claimant's pain since therapy began, with fairly little improvement of the claimant's ability to use the hand. (R. 255-56). On September 14, 2009, after unsuccessful attempts to decrease the pain through therapy, Dr. Shamblin advised the claimant and her manager to call Alabama Neurology and Sleep Medicine, to perform an electromyogram on the claimant's right hand. (R. 254).

On September 16, 2009,  at the request of Dr. James Shamblin, the claimant visited Dr. Thomas K. Emig, a neurologist at Alabama Neurology and Sleep Medicine, who performed an EMG of the claimant's right hand; the EMG showed evidence of carpal tunnel syndrome with abnormalities as moderate to severe. On September 19, 2009, an MRI of her right hand revealed no findings of a marrow edema or fracture, but did show signs of some thinning of the triangular fibrocartilage. (R. 411-12).

On September 22, 2009, Dr. John P. Buckley, an arthroscopic and orthopedic surgeon at University Orthopaedic Clinic and Spine Center, examined the claimant. Dr. Buckley found that the claimant demonstrated a full range of digital flexion and extension and full range of wrist flexion and extension, with tenderness to palpation at the wrist. He recommended surgical decompression given the severity of the sensory deficit and the presence of muscle weakness. (R. 410).

On October 8, 2009, Dr. Buckley performed an open carpal tunnel release surgery on the claimant's right hand. (R. 290). At the October 15, 2009, follow-up appointment, Dr. Buckley recommended that the claimant begin occupational therapy, and noted that she was unable to return to work. (R. 283). On October 29, 2009, three weeks after the surgery, the claimant complained to Dr. Buckley of discomfort in the proximal palm. (R. 284).

On a November 12, 2009, follow-up visit, the claimant told Dr. Buckley that she continued to experience pain in the right hand. Dr. Buckley's records indicated that the claimant had palmar pain, primarily ulnar-sided. Dr. Buckley noted that the claimant had a full range of motion; prescribed a TENS unit for chronic pain associated with surgery; and ordered her to continue occupational therapy. (R. 285).

On December 30, 2009, Dr. Robert Heilpern, a medical consultant on behalf of the Disability Determination Services, completed a physical residual functional capacity assessment form about the claimant, relying only on objective medical records. Dr. Heilpern reviewed the records, and found that the claimant could perform work-related activity at the medium exertional level. He noted in the assessment that the claimant could occasionally lift 50 pounds; could frequently lift 25 pounds; but could be limited pulling or pushing in the upper extremities. (R. 301).

On January 12, 2010, the claimant told Dr. Buckley at a follow-up appointment that she continued to have pain in the palm of the right hand on the ulnar and radial side, and that using the TENS unit did not improve her condition. When asked by Dr. Buckley, on a scale from one to ten how bad the pain was, the claimant reported an eight out of ten. Dr. Buckley's records indicated that the physical therapist did not feel that the claimant would respond to physical

therapy, and recommended that the claimant undergo further nerve conduction studies. (R. 431).

On January 22, 2010, Dr. Thomas Patton, a physician at Alabama Neurology and Sleep Medicine, performed an EMG on the claimant's right hand. Dr. Patton found that the right median motor nerve had prolonged distal onset latency, and decreased conduction velocity. In addition, he indicated no response on the second digit or palm and decreased conduction velocity with the right wrist. Dr. Patton noted that the claimant's right median nerve appeared slightly improved compared to the EMG on September 16, 2009. (R. 512).

On January 27, 2010, the claimant followed up with Dr. Buckley, indicating that her condition had not improved with the use of a TENS unit. (R. 474). Nerve conduction studies showed that the claimant had moderately severe carpal tunnel syndrome; however, the studies showed that her condition had improved electrophysiologically. (R. 475).

On February 10, 2010, the claimant visited Dr. Buckley, who conducted a grip strength test. Dr. Buckley determined that the claimant had "very satisfactory" grip strength to manual muscle testing, and a variable response to mechanical testing. Dr. Buckley noted that the claimant had full digital extension and flexion, no swelling, no redness, no temperature difference, and no abnormal sweating. In addition, Dr. Buckley noted that the claimant was still unable to return to work, and ordered a functional capacities evaluation. (R. 476).

On March 10, 2010, the claimant had a follow-up appointment with Dr. Buckley regarding the results of the functional capacity evaluation. Dr. Buckley noted that the evaluation showed elements of inconsistency, but failed to explain in the records what the inconsistencies were. (R. 477).

On March 17, 2010, claimant followed up with Dr. Buckley regarding her right hand and

wrist. Dr. Buckley found that the claimant had no impairment caused by loss of motion in the wrist or digits in the right hand. In addition, Dr. Buckley noted that the claimant had "normal light touch sensibility, with two point discrimination at 6 millimeters for the distal volar tips of all five digits, and the distal nerve distributions for the radial, median and ulnar nerves." Furthermore, Dr. Buckley diagnosed the claimant with moderately severe right carpal tunnel syndrome and found that she had an impairment rating of twenty percent of her upper extremity, correlating to twelve percent impairment of her whole person. Dr. Buckley placed restrictions on the type of jobs the claimant can work and acknowledged that the claimant could return to work, but with the following restrictions: light or sedentary work only; no repetitive use of the right hand or wrist; no highly forceful grasping with the right hand or wrist; and no pounding of the right hand or wrist. (R. 445-46).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits and supplemental security income, the claimant requested and received a hearing before an ALJ on April 13, 2009. (R. 30-65). At the hearing, the claimant testified that her severe pain in her right hand makes her unable to work. (R. 41). She testified that she cannot do much with her right hand and is unable to lift skillets or heavy objects most of the time because she loses control of her hand. (R. 44).

The claimant testified that she continues to have numbness around her fingertips, and difficulty sensing objects most of the time. (R. 46). She testified that she places a warm towel soaked in alcohol around her right hand, uses a TENS unit, and takes Ibuprofen to treat the pain; however, these methods do not alleviate the pain completely, as she continues to experience pain

when lifting heavy objects. (R. 46, 50-51). The claimant testified that her pain is an eight on a ten-point pain scale and that she continues to have back and hip pain from the fall. (R. 51-52).

The claimant attested that she can sit for about thirty to forty minutes at a time before becoming uncomfortable. The claimant alleged that she cannot walk any further than a mile, because of the pain in her back and hip. The claimant stated that her doctor recommended that she elevate her legs for an hour to an hour and a half each day to reduce the back and hip pain. (R. 52-53).

At the first hearing, a vocational expert, Dr. Julie Russell, described the claimant's past relevant work as a short-order cook. The ALJ concluded that he needed to receive more information from a medical expert on whether the claimant could use her right hand. The ALJ ordered a neurologist to review the medical records, regarding the claimant's testimony that she could not use her right hand. The ALJ scheduled a supplemental hearing for testimony of a medical expert and an additional vocational expert to testify on behalf of the medical expert's findings, as shown below. (R. 53-56).

A medical expert, Dr. Winkler, a neurologist at Massachusetts General Hospital, after reviewing the objective medical evidence, testified about the claimant's carpal tunnel syndrome and her ability to return to work. (R. 70-84). Dr. Winkler noted that carpal tunnel syndrome causes pain that can be consistent and persistent pain, or intermittent pain. (R. 84). Dr. Winkler noted that from looking at the EMG performed on September 16, 2009, the claimant had carpal tunnel median nerve compression before the fall, but the fall caused the pain to increase. He testified that a sensation test indicated that the claimant could feel points touched less than 2 millimeters away, showing that she had sensation in her hand despite the numbness and tingling

9

of her hand. He noted that while the claimant alleged lower back pain, x-rays of her back were unremarkable. Dr. Winkler testified that he agreed with Dr. Buckley's assessment that the claimant should be limited to light or sedentary work. (R. 72-76).

Dr. Winkler testified that the claimant's impairments do not equal a listing, in that the listing deals exclusively with upper extremities, requiring both of the extremities to be affected. He further noted that, while carpal tunnel syndrome is a bilateral condition according to the EMG criteria, functional impairment does not exist on the left hand because the claimant does not have any symptoms involving her left hand. (R. 77).

Dr. Winkler testified that the claimant could frequently lift ten pounds, occasionally lift twenty pounds, stand six hours in an eight-hour day, and sit for six hours in an eight-hour day. He testified that the claimant should avoid repetitive lifting in the upper extremities. (R. 79). Dr. Winkler noted that the claimant should avoid scaffolds, ropes, and ladders; should never crawl; and has limitations in gross and fine manipulation in her right hand. (R. 80-82).

A vocational expert, Mr. James Hare, testified concerning the type and availability of jobs that the claimant could perform. (R. 86-93). He stated that the claimant's previous job as a cook at Piggly Wiggly is rated as medium and skilled at the sixth level. The ALJ asked Mr. Hare whether a hypothetical person, approximately fifty years old with a limited education, could perform the claimant's past relevant work. Mr. Hare responded that under these constraints, the hypothetical person could not perform the past relevant work, as both hands are needed to perform the medium skill level job. (R. 88-89).

The ALJ then asked Mr. Hare to identify any light work opportunities existing in significant numbers in the economy that such a hypothetical person could perform. *Id*. Mr. Hale

replied that two opportunities were available in significant numbers for the claimant: as an information clerk, with 1,800 jobs in Alabama and approximately one million nationally; or an usher, with 580 jobs in Alabama and 100,000 nationally. Mr. Hale noted that he tried finding additional matches other than clerk or usher for the hypothetical, but could not find one meeting the limitations. (R. 89-90).

*The ALJ's Decision*

On September 8, 2011, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. First, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of her disability. Next, the ALJ found that the claimant's carpal tunnel syndrome qualified as a severe impairment, while the back pain did not qualify with multiple negative x-rays. He found that the claimant's impairment of her right hand did not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 19).

The ALJ next considered the claimant's subjective allegations of pain to determine whether she had the residual functional capacity to perform light work. The ALJ found that the claimant had the residual functional capacity to perform light work, but with the following limitations: cannot repetitively push or pull with the upper extremities; cannot climb ladders, ropes, or scaffolds; cannot crawl; and cannot perform repetitive gross and fine manipulation with her right hand. Additionally, the ALJ, relying on Dr. Winkler's testimony, found the claimant could frequently climb ramps and stairs. (R. 19).

To support his conclusion, the ALJ referenced to Dr. Buckley's treatment notes, Dr. Robert Heilpern's physical residual functional capacity assessment, and Dr. Winkler's testimony.

First, the ALJ compared Dr. Buckley's medical records with the claimant's testimony, and found the records conflicted with the claimant's testimony. The claimant alleged an inability to work because of the pain; numbness around the fingertips of her right hand; and pain rated as an eight on a ten-point scale. (R. 41, 46, 50). However, the ALJ found that Dr. Buckley's records indicated the claimant had "no impairment or loss of motion in the wrist or digits of the hand;" normal light touch sensibility, with a two-point discrimination at 6 millimeters for all five fingers and the distal nerve distributions for the radial, median, and ulnar nerves; and minor deficit in her handgrip strength in her right hand compared to the left. The ALJ found that Dr. Winkler's testimony also supported his conclusion because his statements were consistent with the claimant's treating physicians' records and the claimant's residual functional capacity. Dr. Winkler relied on the following medical evidence to discredit the claimant's lower back, hip, and knee pain: the radiology report showing no fractures or dislocations in the back, hip, or knee; claimant's demonstration of normal gait and normal station; lower extremity range of motion and muscle strength as normal; and normal deep tendon reflex with good sensation and motor function. Dr. Winkler opined that the claimant could perform light work, with no repetitive pushing or pulling in the upper extremities;  no climbing ladders, ropes or scaffolds; but could frequently climb ramps and stairs. Dr. Winkler noted that the claimant should avoid vibrations, heights, and moving machinery, which is consistent with the claimant's residual functional capacity. Dr. Heilpern found that, after reviewing the medical records, the claimant could perform work-related activity at a medium exertional level. (R. 20).

Based on the reports of Dr. Buckley, Dr. Winkler, and Dr. Heilpern, the ALJ concluded that the claimant's subjective allegations were not entirely credible. The ALJ found that objective

medical evidence did support the claimant's complaint of problems in the right hand, but the problem was not severe. Additionally, the ALJ noted that the objective medical evidence did not indicate any back, hip, or knee problems. (R. 20).

The ALJ gave Dr. Heilpern's opinion minimal weight, while giving significant weight to Dr. Buckley and Dr. Winkler's opinions. The ALJ indicated that Dr. Heilpern was given minimal weight as his opinions were inconsistent with other medical opinions contained in the record. He noted that Dr. Buckley was a treating physician and that his opinions were consistent with the objective medical evidence as a whole. The ALJ afforded significant weight to Dr. Winkler's opinions which were "consistent with the treating physicians and the record as a whole." (R. 20).

The ALJ next considered whether the claimant could perform any past relevant work. The ALJ compared the exertional demands of the claimant's past work, classified by Mr. Hare, the vocational expert, in conjunction with her residual functional capacity. The ALJ concluded that the claimant is unable to perform any past relevant work. (R. 20).

The ALJ considered the claimant's age, education, working experience, and residual functional capacity to determine whether jobs in significant numbers existed in the national economy for the claimant to perform. The ALJ concluded that the claimant had limitations in performing all or substantially all of the requirements for light exertional work. Based on Mr. Hare's testimony, the ALJ found that, given the claimant's residual functional capacity, two occupational opportunities existed in significant numbers in the national economy for the claimant:  information clerk and usher. Mr. Hale noted that approximately 1,800 jobs in Alabama and one million nationally existed for information clerk, and 580 jobs in Alabama and 100,000 nationally as an usher. The ALJ indicated that Mr. Hare's testimony was consistent with

13

information contained in the *Dictionary of Occupational Titles*. (R. 21).

Based on these findings and testimony from the vocational expert, the ALJ concluded that the claimant retains the capacity for work that exists in significant numbers in the national economy and, therefore, is not disabled under the Social Security Act. (R. 21).

## VI. DISCUSSION

The claimant argues that the ALJ improperly applied the Eleventh Circuit's pain standard. To the contrary, this court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision.

The pain standard applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

In applying the pain standard, if the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the court accept the testimony as true. *Id.*

In this case, the ALJ conceded that the claimant suffers from an underlying medical

14

condition; however, he found that the entirety of the medical evidence failed to support the claimant's alleged severity of pain. In addition, the ALJ found that the underlying medical condition was not of such severity that it could reasonably be expected to give rise to the claimant's alleged pain.

The ALJ explicitly articulated his reasons for discrediting the claimant's alleged severity of pain. The ALJ found that Dr. Buckley's objective medical evidence on March 17, 2010, conflicted with the claimant's alleged limitations. The ALJ gave Dr. Buckley's opinion substantial weight as the treating physician for the claimant, and noted that his opinions were consistent with the objective medical evidence.  The ALJ pointed to Dr. Buckley's records that the claimant had no impairment or loss of motion in the wrist or digits of the right hand, displayed a full range of motion and sensitivity in her right hand, despite numbness and tingling. The ALJ correctly reasoned that the objective medical evidence in the record did not reveal a condition severe enough to give rise to the symptoms alleged by the claimant.

The ALJ also considered Dr. Winkler's testimony as to what type of work the claimant could perform given her limitations, and whether Dr. Winkler's opinions were consistent with the claimant's testimony. Dr. Winkler indicated that the claimant could only perform light exertional work, with no repetitive pushing or pulling in the upper extremities. The ALJ noted Dr. Winkler's opinion that the claimant could do light work was inconsistent with the claimant's testimony that her symptoms were too severe to return to work. Relying on the limitations espoused by Dr. Winkler, the ALJ reasoned that Dr. Winkler's opinions supported the findings of Dr. Buckley and further indicated that the claimant's pain was not as severe as she alleged.

Finally, the ALJ considered the claimant's allegations of back and foot pain, and found

that the objective medical evidence did not support her claims. The objective medical evidence in the record showed no fractures or dislocations in the back or foot, and the clamant demonstrated a full range of motion, muscle strength normal, and good motor function. The ALJ concluded that if the claimant's pain was so severe, the objective medical evidence would have corroborated her allegations. Additionally, the ALJ noted that the lack of objective medical evidence supporting the claimant's allegations of severe pain ultimately undermined the credibility of her statements regarding its presence. Thus, the ALJ concluded that Dr. Winkler's testimony was consistent with the claimant's treating physicians' opinions and the record as a whole.

Based on the explicit findings of the ALJ, this court concludes that he properly applied the Eleventh Circuit's pain standard and that substantial evidence supports his decision. Therefore, this court affirms the decision of the Commissioner.

## VII. CONCLUSION

For the reasons stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED.  The court will enter a separate Order to that effect simultaneously.

DONE and ORDERED this 4th day of August, 2014.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

16